# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PAYLESS SHOE SOURCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-4156-KGS |
| | ) | |
| W/J COMMERCIAL VENTURE, L.P, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court upon Plaintiff's Motion for Attorneys' Fees and Expenses (ECF No. 43) and Defendant Retail Center Partners, Ltd.'s Motion for Attorney's Fees and Costs (ECF No. 46).   For the reasons stated below, the Court grants in part each motion.

## I.    Background

Plaintiff Payless ShoeSource, Inc. ("Payless" or "Plaintiff") operates retail stores to sell shoes and related accessories.[1]  Payless leases nearly all of the stores that it operates.[2]

On December 18, 1996, Volume Shoe Corporation ("Volume") entered into an agreement with Watt Johnson Commercial Venture ("WJCV") to lease space in the North Lake Square Shopping Center in Pasadena, California ("North Lake Square Lease").[3]    Defendant W/J Commercial Venture, L.P. ("W/J Commercial") is the successor-in-interest to WJCV, and Payless

---

[1] Pet. ¶ 2, ECF No. 1-1.

[2] Devine Decl. ¶ 25, ECF No. 44-3.

[3] *Id.* ¶ 26.

is the successor-in-interest to Volume under the North Lake Square Lease.[4]

On July 19, 1983, Volume entered into an agreement with Watt Commercial Properties, Inc. ("WCPI") to lease space in the Compton Town Center Shopping Center in Compton, California (the "Compton Lease").[5]   Defendant Compton Commercial Redevelopment Company ("Compton Commercial") is the successor-in-interest to WCPI, and Payless is the successor-in-interest to Volume under the Compton Lease.[6]

On January 31, 1992, Payless entered into an agreement with Nadine I. Watt to lease space in the Palo Woods Shopping Center in Harbor City, California ("Palo Woods Lease").[7]  Defendant Ginger Root Commercial Associates LLC ("Ginger Root") was the successor-in-interest to Nadine I. Watt.[8]

On August 12, 1997, Payless entered into an agreement with Retail Centers, Ltd. ("RCL") to lease space in the North Mesa Plaza Shopping Center in Las Vegas, Nevada ("North Mesa Lease").[9]  Retail Center Partners, Ltd. ("Retail Center") is the successor-in-interest to RCL under the "North Mesa Lease."[10]

Watt Properties, Inc. dba Watt Management Company ("Watt") operates and manages the

---

[4] *Id*.

[5] *Id*. ¶ 27.

[6] *Id*.

[7] *Id*. ¶ 28.

[8] *Id*.

[9] *Id*. ¶ 29.

[10] *Id*.

shopping centers where the space is leased under the North Lake Square, Compton, Palo Woods, and North Mesa Leases.[11]

In addition to rent, each agreement requires Payless to pay a share of the landlord's expenses to operate, repair, and maintain the common areas of the shopping centers where the space is leased ("common area maintenance" or "CAM" costs). Each lease also requires Payless to pay a share of the landlord's real estate taxes and insurance expenses. CAM costs, taxes, and insurance charges will be referred to as "Pass-Through Expenses" in this Order. The leases define the expenses that can be included in CAM costs and how the other Pass-Through Expenses are calculated.

The North Lake Square, Compton, and Palo Woods leases each contain a "Most Favored Nation" provision that limits Payless' pro-rata share of the Pass-Through Expenses.[12] Prior to initiating this lawsuit, Payless became concerned that it was being over-charged for Pass-Through Expenses, and through its outside auditors, requested documentation from Watt relating to the calculation of Pass-Through Expenses.[13] Payless contends that Watt did not provide the requested information to Payless or its auditors.[14]

After determining that the landlords were overcharging for Pass-Through Expenses, Payless filed suit against Defendants in the District Court of Shawnee County, Kansas.[15] The parties then

---

[11] *Id.* ¶ 30.

[12] North Lake Square Lease § 20.05, ECF No. 14-1; Compton Lease § 20.05, ECF No. 14-2; Palo Woods Lease § 20.05, ECF No. 14-4.

[13] Devine Decl. ¶ 33, ECF No. 44-3.

[14] *Id.*

[15] *Id.* ¶ 34.

entered into an Agreement ("Mediation Agreement") dated April 14, 2010, wherein Payless agreed to dismiss its complaint without prejudice so that the parties could focus on attempting to mediate the dispute.[16]  The mediation occurred on October 19, 2010, but the parties were unable to resolve their dispute.[17]

On November 23, 2011, Payless re-filed its action in the District Court of Shawnee County, Kansas ("Re-filed Action").[18]  In its petition, Payless asserted that Defendants overcharged Payless for Pass-Through Expenses since 2004.[19]  Payless sought damages in excess of $75,000 and a declaratory judgment that it is entitled to access Watt's documents relating to Pass-Through Expenses.[20]  Defendants removed the Re-filed Action to this Court based upon diversity of citizenship and filed a collective answer asserting 27 affirmative defenses.[21]

On or about August 17, 2011, the parties executed an agreement to settle this case ("Settlement Agreement").[22]  The parties agreed that Payless is entitled to a refund of $174,054.76 for Pass-Through Expenses under the North Lake Square, Compton, and Palo Woods Leases.[23]  The Settlement Agreement also provides that Payless is the prevailing party in this litigation under

---

[16] Id. ¶ 35.

[17] Id. ¶ 39.

[18] Pet., ECF No. 1-1.

[19] Id.

[20] Id.

[21] Answer, ECF No. 5.

[22] Devine Decl., attach. D ("Settlement Agreement"), ECF No. 44-3.

[23] Settlement Agreement § 1.1.

Sections [20.06] of the North Lake Square, Compton, and Palo Woods Leases and entitled to recover its reasonable attorneys' fees and costs.[24]

Under the Settlement Agreement, Payless and Retail Center are each entitled to argue that it is the prevailing party under Section [22.06] of the North Mesa Lease, such that it is entitled to recover its reasonable attorneys' fees and costs.[25]  The Settlement Agreement provides further that the Court will determine any claims for attorneys' fees and expenses.

On September 1, 2011, the Court granted the parties' joint motion to add Palo Woods LLC ("Palo Woods") as a defendant in this case.[26]  Although Palo Woods did not sign the Settlement Agreement, the parties agreed that Palo Woods is the successor-in-interest to defendant Ginger Root under the Palo Woods Lease.[27]  The Court approved the parties' Settlement Agreement on September 7, 2011.[28]

Payless and Retail Center have now filed cross-motions for attorneys' fees.  Payless seeks $459,954.37 in attorneys' fees and costs incurred in pursuing the claims under all four leases, including the North Mesa Lease.  Retail Center seeks $62,201.82 in attorneys' fees and costs incurred in defending the claims brought under the North Mesa Lease.

## II.   Analysis

### A.   Nevada and California Law Govern the Determination of Attorneys' Fees and

---

[24] *Id.* § 7.1.

[25] *Id.* § 7.2.

[26] Order, ECF No. 40.

[27] Settlement Agreement at 2, ECF No. 44-3.

[28] Order, ECF No. 44.

**Costs.**

The Court must first determine whether to apply federal law, Kansas law, Nevada law and/or California law.

In diversity cases, a federal court must apply federal procedural law and state substantive law.[29]   If the matter is substantive, then a court looks to the substantive law of the forum state, including its choice-of-law principles to determine the applicable state law.   Attorney fees are a substantive matter controlled by state law.[30]   Accordingly, the Court will determine what state law governs based upon Kansas law.[31]   Under Kansas choice-of-law principles, rules relating to whether attorney fees are to be awarded are substantive.[32]

The North Mesa Lease contains a provision that it "must be interpreted and construed under the laws of the State where the Premises are located."[33]   The North Lake Square, Compton, and Palo Woods Leases each contain a similar choice-of-law provision as the North Mesa Lease.[34]

Kansas law recognizes the principle of freedom to contract and, under most circumstances,

---

[29] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[30] *Combs v. Shelter Mutual Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008).

[31] *Morrison Knudsen Corp. v. Grp. Improvement Techniques, Inc.*, 532 F.3d 1063, 1077 n.12 (10th Cir. 2008) (stating that a federal court sitting in diversity applies "the choice of law principles of the state in which it sits").

[32] *Carolina Indus. Prods., Inc. v. Learjet, Inc.*, 189 F. Supp. 2d 1147, 1187 (D. Kan. 2001).

[33] North Mesa Lease § 22.11, ECF No. 14-3.

[34] North Lake Square Lease § 20.10, ECF No. 14-1; Compton Lease § 20.10, ECF No. 14-2; Palo Woods Lease § 20.10, ECF No. 14-4.

permits parties to choose the law applicable to their contract.[35]  "Where the parties to a contract have entered into an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement."[36]  The enforceability of a contractual choice-of-law provision generally turns on whether the forum selected bears a reasonable relation to the contract at issue.[37]  But Kansas courts will not enforce a choice-of-law provision if applying another state's law would be contrary to Kansas public policy.[38]

Here, the leased premises under the North Mesa Lease are located in Nevada.  The leased premises under the North Lake Square, Compton, and Palo Woods Leases are located in California. The Court finds there is a reasonable relationship between Nevada and the North Mesa Lease and a reasonable relationship between California and the North Lake Square, Compton, and Palo Woods Leases.  No party has argued that applying Nevada and California law would violate Kansas public policy.  Accordingly, the Court will apply Nevada law when analyzing entitlement to attorneys' fees under the North Mesa Lease and California law when analyzing the issue under the North Lake Square, Compton, and Palo Woods Leases.

Even if the Court did not interpret the choice-of-law provisions to encompass the issue of attorneys' fees, the Court would still apply Nevada law to the North Mesa Lease and California law to the North Lake Square, Compton, and Palo Woods Leases.  In the absence of a choice-of-law

---

[35] *Brenner v. Oppenheimer & Co.*, 44 P.3d 364, 374 (Kan. 2002).

[36] *Id*. at 375.

[37] *Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F. Supp. 2d 1269, 1273 (D. Kan. 1998).

[38] *Venture Commercial Mortg., LLC v. FDIC*, No. 09-2285-KHV, 2010 WL 820711, at *5 (D. Kan. Mar. 5, 2010).

provision, Kansas courts generally apply the *lex loci contractus* doctrine to determine issues that relate to the substance of the obligation and apply the law of the state where the contract is made.[39] A contract is made where the last act necessary for its formation occurs.[40]  Here, the North Mesa Lease was first sent to the tenant for execution and then signed by Retail Center in Nevada; similarly, the North Lake Square, Compton, and Palo Woods Leases were first sent to the tenants for execution and then signed by the respective landlords in California.  Because the last act necessary for formation occurred in Nevada for the North Mesa Lease and California for the North Lake Square, Compton, and Palo Woods Leases, the Court would still apply Nevada and California law.

**B.  Retail Center is the Prevailing Party under the North Mesa Lease.**

Section 22.06 of the North Mesa Lease entitles the prevailing party to recover its expenses and attorneys' fees incurred in any action to enforce or defend its right under the lease.  Section 22.06 states:

> If either party incurs any expense, including reasonable attorney fees and expert witness fees in connection with any action or proceeding instituted by either Party to protect, enforce or defend rights or obligations under this Lease, the prevailing Party in such action or proceeding shall recover its reasonable expenses from the other Party.

Payless and Defendant Retail Center each claim to be the prevailing party under the North Mesa Lease.  As discussed above, Nevada law governs this issue.

---

[39] *Novak v. Mutual of Omaha Ins. Co.*, 28 P.3d 1033, 1039 (Kan. Ct. App. 2001); *Layne Christensen Co. v. Zurich Canada*, 38 P.3d 757, 766–67 (Kan. Ct. App. 2002); *Moses v. Halstead*, 58 F.3d 1248, 1252–1254 (10th Cir. 2009). Kansas courts generally look to the law of the place where the contract was to be performed when the issue before the court relates to the manner of performance.  *Layne Christensen Co.*, 38 P.3d at 766–67; *Moses*, 58 F.3d at 1252–1254.

[40] *Wilkinson v. Shoney's, Inc.*, 4 P.3d 1149, 1160 (Kan. 2000).

8

Attorneys' fees and costs are recoverable in Nevada pursuant to a contractual provision contained in the parties' agreement.[41]  A plaintiff can be considered a prevailing party for attorney fee purposes if it succeeds on any significant issue in litigation that achieves some of the benefit it sought in bringing the suit.[42]

In its Petition, Payless alleges that Retail Center over-charged Payless for Pass-Through Expenses since 2004; Payless sought monetary damages from Retail Center and a declaratory judgment that Payless is entitled to access Watt's documents relating to Pass-Through Expenses. Under the Settlement, the parties agreed that Payless would be refunded $174,054.76 for Pass-Through Expenses through 2009.[43]  But none of the over-charges were allocated to Retail Center under the North Mesa Lease, and there was no finding that Retail Center ever overcharged Payless.[44] Payless acknowledges that "the [l]itigation did not result in recovery of overcharges for North Mesa . . ."[45]

Although it did not receive a payment from Retail Center, Payless argues that it achieved other benefits in this litigation related to the North Mesa Lease.  Section 22.08 of the North Mesa Lease entitles Payless to audit the books and records of Retail Center once during any twelve month

---

[41] Nev. Rev. Stat. § 18.101; *see Semenza v. Caughlin Crafted Homes*, 901 P.2d 684, 689 (Nev. 1995) (affirming the district court's award of attorneys' fees to the prevailing party under terms of purchase agreement); *Sanchez v. Alsonso*, 615 P.2d 934, 938 (Nev. 1980) (affirming the district court's award of attorneys' fees to the prevailing party under terms of note).

[42] *Women's Fed. Sav. & Loan Ass'n of Cleveland v. Nev. Nat'l Bank*, 623 F. Supp. 469, 470 (D. Nev. 1985) (analyzing Nevada statute for awarding attorneys' fees).

[43] Settlement Agreement § 1.1, ECF No. 44-3.

[44] *Id.*, Ex. A.

[45] Mem. in Supp. of Mot. for Attorneys' Fees and Expenses at 14, ECF No. 44.

consecutive period.  Payless contends that prior to this litigation, Retail Center (or Watt) refused to provide its records to Payless in violation of the lease.[46]  Payless argues that it is the prevailing party because it obtained the documents and records during this litigation.

Retail Center contends that any audit must be conducted at the location where Retail Center's books and records are maintained and that Retail Center is not obligated to copy and ship its records to Payless.  Thus, Retail Center argues that it did not violate the North Mesa Lease.

Regardless of whether Retail Center improperly withheld documents relating to the calculation of Pass-Through Expenses, the Court does not believe that Payless' receipt of these records through discovery renders Payless a prevailing party in this litigation.  The Settlement Agreement does not include any finding or admission that Retail Center was obligated under the North Mesa Lease to produce the records prior to this litigation.  Payless obtained the records during discovery because the records are relevant to the issues in the case, not because Payless prevailed upon its claim that it was entitled to the documents under the terms of the lease.

Payless also argues that it is entitled to receive its full attorneys' fees because it prevailed upon the majority of the claims brought in this litigation.  In support of its argument, Payless cites various federal cases in which courts awarded a plaintiff his or her full attorneys' fees even though he or she did not succeed on all of the claims in the lawsuit.  Under federal law, in cases where a plaintiff succeeds on only some of his or her claims, courts are to consider (1) whether the plaintiff's successful and unsuccessful claims were related; and (2) whether the plaintiff's overall level of success justified a fee award based on the hours expended by plaintiff's counsel.[47]  Part of the

---

[46] Devine Decl. ¶ 33, ECF No. 44-3.

[47] *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1176–77 (10th Cir. 2010).

rationale for awarding full attorneys' fees in these cases appears to be based upon the difficulty, if not impossibility, of apportioning costs between tightly interwoven claims.[48]  But "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."[49] In such cases, work on one claim will be unrelated to work on another claim, and work on the unsuccessful claim cannot be deemed to be "expended in pursuit of the ultimate result achieved."[50]

The Nevada Supreme Court has addressed the propriety of apportioning costs when the prevailing party pursued similar claims, based on the same factual circumstances, against multiple defendants.  In *Mayfield v. Koroghli*, the Nevada Supreme Court held that when a plaintiff pursues claims based on the same factual circumstances against multiple defendants in the same case, it is within the court's discretion to determine whether apportionment is rendered impracticable by the interrelationship of the claims against the multiple defendants.[51]

In a broad sense, this case involves a similar theory by Payless against all four Defendants – Payless alleges that each Defendant breached its respective lease with Payless by overcharging for

---

[48] *See id.* (awarding full attorneys' fees where it was difficult to distinguish between the time spent on the successful and unsuccessful claims); *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998) (recognizing that in certain cases, "it is inappropriate for a district court to evaluate the individual claims as though they were discrete and severable" and that fees should not be reduced where the facts supporting the unsuccessful claims were part of "one bundle of proof" with the successful ones); *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 820 F. Supp. 1330, 1335–36 (D. Kan. 1993) (not apportioning costs between unsuccessful and successful claims because the claims centered on same issue and were so tightly wound together that the same work was necessary for all claims).

[49] *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).

[50] *Id.* at 435 (internal citations and quotations omitted).

[51] *Mayfield v. Koroghli*, 184 P.3d 362, 369 (Nev. 2008).

Pass-Through Expenses. Because Defendants used the same agent (Watt) to operate and manage the shopping centers and because Payless filed suit against all four Defendants in one action, there was necessarily some overlap in how the case and discovery proceeded. For example, Watt maintained the documents on behalf of all four Defendants and produced documents on behalf of all four Defendants. But this does not necessarily mean that the claims were so interrelated that apportionment is impractical under Nevada law.

Payless sued four different Defendants, alleging that each one breached a different lease with Payless. Payless had to prove that it was overcharged under each contract, which involved separately calculating the Pass-Through expenses for each lease. As Payless describes, "for each lease year, it was necessary to make separate 'pro rata share' calculations of CAM, taxes, and insurance for each location, which involved confirming the pools of expenses, eliminating any improper charges, applying Payless' pro rata share to the pool, and determining the proper charges."[52] Then, under the most favored nation provision, "it was necessary to convert each of the charges to a per square foot amount, then compare that amount to the per square foot charges for CAM, tax, and insurance of each other tenant and the respective Shopping Center."[53]

As a result, proving a violation of the North Mesa Lease was based upon a unique set of facts and calculations as to that specific lease. Whether Payless was overcharged under the North Lake Square, Compton, and Palo Woods Leases did not necessarily bear on whether Payless was overcharged under the North Mesa Lease. Further, there appear to be some differences between the terms of the North Mesa Lease and the other leases that could affect the Pass-Through Expense

---

[52] Reply Brief in Supp. of Pl.'s Mot. for Attorneys' Fees and Expenses at 18, ECF No. 54.

[53] *Id.*

calculations.  For example, the North Mesa Lease contained a cap or limitation on the maximum annual increase in CAM charges.

Payless also argues that it is the prevailing party under the North Mesa Lease because the parties agreed how to calculate the limitation on CAM charges for the 2009 lease year.  But Payless raises this argument for the first time in its reply brief. As a result, the Court will not consider this argument in determining whether Payless is the prevailing party under the North Mesa Lease.[54]

Even if the Court were to consider this argument, Court would still not find that Payless is the prevailing party.  As discussed above, the North Mesa Lease contained a cap or limit on the maximum annual increases in CAM charges.  Payless contends that Watt and Retail Center used a different method of calculating the CAM cap for years 2005 through 2010 than it did for 1999 through 2004.  Payless states that Retail Center's "decision to change the manner in which CAM was calculated *could have* affected the CAM cap."[55]  In the parties' Settlement Agreement, they agreed that the correct cap on CAM charges for the 2009 Lease Year was $8,930.[56]  It is difficult for the Court to determine how this differs from Retail Center's calculation of the cap.  Regardless, this does not appear to have actually impacted the amount of CAM charges due for 2009 because Retail Center did not refund any amount to Payless under the North Mesa Lease for 2009.  Further, this calculation affected only one year for which Payless sought a refund.[57]

---

[54] *See Liebau v. Columbia Cas. Co.*, 176 F. Supp. 2d 1236, 1244 (D. Kan. 2001) ("Courts in this district generally refuse to consider issues raised for the first time in a reply brief.").

[55] Devine Supp. Decl. ¶ 17, ECF No. 54-1 (emphasis added).

[56] Settlement Agreement § 5.3, ECF No. 44-3.

[57] Payless alleged that it had been over-charged since 2004.

13

Under the Settlement Agreement, there was no finding that Retail Center breached the North Mesa Lease, overcharged Payless for Pass-Through Expenses, or improperly withheld documents from Payless.[58]  Payless settled the case without the payment of any overcharges by Retail Center. Further, the Settlement Agreement contemplates a dismissal with prejudice of Payless' claims against Retail Center for 2009 and all prior years.[59]  As a result, the Court finds that Retail Center is the prevailing party under the North Mesa Lease.

Because Payless did not prevail on its claim under the North Mesa Lease, Defendants argue that the Court should reduce any fees awarded to Payless by 25%.  Payless argues that an across-the-board reduction of 25% is not warranted because nearly every aspect of this litigation involved or related to Payless' claims under all four leases.  In other words, Payless contends that the fees incurred in this case were not significantly higher as a result of including claims against four Defendants instead of three.  Rather, Payless proposes to reduce the amount of its requested fees by the portion allocable to the North Mesa Lease.  The Court is persuaded by Payless' argument.

For example, responding to Defendants' motion to transfer was not more complicated or expensive because the motion was filed on behalf of four Defendants instead of three.  Even where there might have been some increase in fees because of the inclusion of North Mesa, the increase is not necessarily 25%.  As Payless points out, the mediation statement, written discovery, deposition preparation, settlement, the fee petition, and other aspects of the face focused significantly on

---

[58] *Cf. Women's Fed. Sav. & Loan Ass'n of Cleveland v. Nev. Nat'l Bank*, 623 F. Supp. 469, 480 (D. Nev. 1985) (finding plaintiff to be the prevailing party because it was successful in proving that defendant breached the parties' agreement, which was the most significant issue in the litigation).

[59] The dismissal is without prejudice as to 2010.

14

background information about commercial leases, Pass-Through Expense calculation, and other general topics, with only a small portion of the work focused specifically on the North Mesa Lease calculations.

Mr. Devine, the lead partner at the Williams Mullen law firm,[60] has reviewed each time entry for Williams Mullen's work on this case to determine the extent, if any, a particular charge was increased by work on the claim brought under the North Mesa Lease.[61]  Mr. Devine indicates that approximately $46,794 in fees relates to the North Mesa Lease claim.[62]  He does not believe that local counsel's charges were increased as a result of North Mesa Lease claim.[63]  The Court has reviewed Foulston Siefkin's time entries and agrees with Mr. Devine.  The Court will deduct $46,794 from Payless' award of attorneys' fees.

### C.      Payless is Entitled to $349,581.06 in Expenses and Attorneys' Fees as the Prevailing Party under the North Lake Square, Compton, and Palo Woods Leases.

The North Lake Square, Compton, and Palo Woods Leases contain the following or a substantially similar provision:

> Section 20.06 Expenses and Attorney's Fees.  If either party incurs any expense, including reasonable attorney's fees, in connection with any action or proceeding instituted by either party by reason of any default or alleged default of the other party hereunder, the prevailing party in such action or proceeding shall be entitled to recover its said

---

[60] Williams Mullen was lead counsel for Payless.  Lawyers with the Foulston Siefkin law firm served as local counsel.

[61] Devine Supp. Decl. ¶ 24, ECF No. 54-1.

[62] *Id.* ¶ 26. $20,000 relates to fees incurred through July 31, 2011. $26,794 relates to fees incurred after July 31, 2011.

[63] *Id.* ¶ 27.

reasonable expenses from the other party.[64]

In the Settlement Agreement, the parties agree that Payless is the prevailing party under the North Lake Square, Compton, and Palo Woods Leases and is entitled to recover its reasonable expenses and attorneys' fees.[65]

In its motion and supporting memorandum, Payless seeks to recover (1) $304,410.00 in attorneys' fees for Williams Mullen through July 31, 2011; (2) $11,533.17 in attorneys' fees for Foulston Siefkin through September 15, 2011;[66] (3) audit fees of $32,214.10; (4) expert witness fees of $13,666.80; (5) costs incurred by Williams Mullen through July 31, 2011 of $8,868.55; and (6) costs incurred by Foulston Siefkin through September 15, 2011 of $1,261.67.[67] In its reply, Payless requests an additional $77,199.50 in attorneys' fees for Williams Mullen, $830.40 in costs, and $9,970.18 in expert fees incurred after July 31, 2011.

1.    Costs and expenses incurred by Williams Mullen through July 31, 2011 and Foulston Siefkin through September 15, 2011

Payless seeks to recover the following categories of expenses as the prevailing party under Section 20.06 of the North Lake Square, Compton, and Palo Woods Leases: (1) audit fees of $32,214.10; (2) expert witness fees of $13,666.80; and (3) costs of incurred by Williams Mullen and

---

[64] North Lake Square Lease § 20.06, ECF No. 14-1; Compton Lease § 20.06, ECF No. 14-2; Palo Woods Lease § 20.06, ECF No. 14-4. The Palo Woods Lease uses the term "Attorneys' Fees" rather than "Fees."

[65] Settlement Agreement § 7.1, ECF No. 44-3.

[66] From the Court's calculations of the invoices supplied by Foulston Siefkin, the amount of attorney fees incurred was $10,271.50. The amount of attorneys' fees *and costs* totaled $11,533.17.

[67] In its motion, Payless erroneously listed the costs incurred by Foulston Siefkin as $1,216.67 instead of $1,261.67.

16

Foulston Siefkin.

Fed. R. Civ. P. 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Local Rule 54.1 describes the procedure for parties seeking costs under Fed. R. Civ. P. 54.   It provides that any party requesting costs must "file a bill of costs on a form provided by the clerk" along with a memorandum in support of the requested costs, which "(1) clearly and concisely itemize[s] and describe[s] the costs;" (2) "set[s] forth the statutory and factual basis for the reimbursement of those costs under 28 U.S.C. § 1920;" (3) "reference[s] and include[s] copies of relevant invoices, receipts and disbursement instruments in support of the requested costs;" and (4) "state[s] that the party has made a reasonable effort . . . to resolve disputes regarding costs."   Failure to timely file the cost bill and supporting memorandum constitutes a waiver of the costs.[68]

Defendants contend that Payless is not entitled to recover its costs because it did not submit a form AO133 along with a supporting memorandum as required by D. Kan. R. 54.1.   In *Wirtz v. Kansas Farm Bureau Services, Inc.*, the undersigned addressed a similar argument similar to the one made by Defendants in this case.[69]   The defendant in *Wirtz* argued that plaintiff's requests for costs should not be considered by the court because it was untimely and not submitted on the Bill of Costs form prescribed in D. Kan. R. 54.1.[70]   The Court overruled defendant's objections, stating that it would "elevate the substance of plaintiff's request above its form and address all of the items for

---

[68] D. Kan. R. 54.1(3).

[69] *Wirtz v. Kan. Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1206 (D. Kan. 2005).

[70] *Id.*

17

which the plaintiff seeks compensation."[71]

Here, the Settlement Agreement specifies that Payless was to file its initial submission "setting forth evidence, documentation, and argument concerning its reasonable expenses, including but not limited to reasonable attorneys' fees . . . " within 28 days of the Court's approval of the settlement agreement.[72]   The Court adopted the parties' proposed schedule, and Payless has submitted its motion for costs and attorneys' fees according to the Court's briefing schedule.[73]

Following its approach in *Wirtz*, the Court will not find waiver simply because Payless did not use the Court's bill of costs form.  Here, Payless provides detailed billing statements that reflect the costs or expenses incurred by its attorneys.  The statements from Payless' attorneys separately describe each cost and the date it was incurred.  Williams Mullen also attaches invoices from Advantage IQ and Retail Optimization for the audit and expert expenses being claimed by Payless. Payless essentially provides the information that is contained on the Court's bill of costs form.[74]  The only exception is that Payless does not add up the costs by category (i.e. totaling all of the federal express charges).  But this is not particularly troubling because Payless provides the supporting documentation to calculate this information.

Defendants do not explain how they have been prejudiced in responding to Payless' request for costs simply because Payless did not utilize this District's bill of costs form.  The issue for the

---

[71] *Id.*

[72] Settlement Agreement § 7.3.1.1, ECF No. 44-3.

[73] Order, ECF No. 41.

[74] Although Defendant Retail Center submitted its costs on this District's bill of costs form, it did not provide the Court with any more detailed information than what is reflected in the billing statements from Payless' counsel.

Court is whether Payless has properly supported its claim for costs.  The Court now turns to the specific costs and expenses requested by Payless.

Among other costs, Payless is seeking $45,880.90 in audit and accounting fees for experts employed in a non-testimonial advisory capacity.  Defendants argue that these type of expert and audit expenses are not authorized by federal law.

In most diversity cases, the assessment of costs is governed by federal law, not state law.[75] 28 U.S.C. § 1920 delineates the expenses that a federal court may tax as costs against the losing party.  Expenses not specifically authorized by the statute or contract are not recoverable as costs.[76] In other words, a district court has no discretion to award costs not authorized by statute or contractual provision.[77]

28 U.S.C. § 1920(3) authorizes fees for witnesses.  The witness fee specified in section 1920 is further defined in 28 U.S.C. § 1821.  Section 1821 provides that a witness who attends a court proceeding is entitled to an attendance fee of $40 per day and certain travel expenses.  A party's expert witness fees are recoverable only up to the per-day statutory limit applicable to any witness under 28 U.S.C. § 1821.[78]

As to non-testifying expert witnesses, the Supreme Court has held that "[n]one of the

---

[75] *Gobbo Farms & Orchards v. Poole Chem. Co.*, 81 F.3d 122, 123 (10th Cir. 1996); *Chaparral Res., Inc. v. Monsanto Co.*, 849 F.2d 1286, 1291–93 (10th Cir. 1988).  A federal court might be required to apply state law if a state statute expressly mandates the award of certain costs not contemplated by federal law.  *Chaparral Res., Inc.*, 849 F.2d at 1293 n.7.

[76] *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987).

[77] *Rangolan v. Cnty. of Nassau*, 370 F.3d 239, 250 (2d Cir. 2004).

[78] *Chaparral Res., Inc.*, 849 F.2d at 1292.

categories of expenses listed in § 1920 can reasonably be read to include fees for services rendered by an expert employed by a party in a nontestimonial advisory capacity."[79]   Accordingly, Defendants are correct that sections 1821 and 1920 do not authorize the audit and expert expenses claimed by Payless.  "[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920."[80]

But Payless is not seeking to recover its expenses under 28 U.S.C. §§ 1821 and 1920. Payless is relying upon the fee-shifting provisions in the parties' lease agreements as the basis for recovering its expenses.  And the limitations of section 1920 do not apply if there is a contractual provision that authorizes costs and expenses.[81] At least one federal court has determined that state law governs when a party relies upon a contractual provision to recover costs beyond those permitted by 28 U.S.C. § 1920.[82]   As discussed above, California law governs the North Lake Square, Compton, and Palo Woods Leases.

Cal. Civ. Proc. § 1033.5(b) specifies items that are allowable as costs to a prevailing party. Section 1033.5(b) expressly states that fees for experts are not taxable as costs unless expressly authorized by law or the expert was ordered by the court.

---

[79] *West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 87 (1991), superseded by statute on other grounds by the Civil Rights Act of 1991, Pub. L. No. 102-166.

[80] *Crawford Fitting Co.*, 482 U.S. at 445.

[81] *Sherman Street Assocs., LLC v. JTH Tax, Inc.*, No. 3:03-cv-1875 (CFD), 2011 WL 5925063, at *4 (D. Conn. Nov. 21, 2011) (and cases cited therein).

[82] *Cataphora, Inc. v. Parker*, No. C09-5749 BZ, 2012 WL 174817, at *1 (N.D. Cal. Jan. 20, 2012).

Cal. Civ. Code § 1717(a) states:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Appellate courts in California are split on whether section 1717 could allow for costs, such as expert witness fees, that are not provided for in Cal. Civ. Proc. § 1033.5(b).  In *Bussey v. Affleck*, one Court of Appeal held that where a contract between the parties provides for the payment of attorney's fees and costs, expenses of experts paid by counsel may be recovered as attorney fees if they represent an expense ordinarily billed to a client rather than an overhead component of the attorney's hourly rate.[83]

In *Ripley v. Pappadopoulos*, a different Court of Appeal disagreed with *Bussey* and concluded that because the express provisions of Section 1033.5(b) do not allow for recovery of expert witness fees as costs, such costs are not recoverable under a contract providing for attorney's fees.[84]  The court stated that an "undefined general contractual provision entitling the prevailing party to 'reasonable attorney's fees and costs' must be interpreted in light of" Section 1033.5's limited definition of costs.[85]

*In Bussey* and *Riple*y, the Courts of Appeal did not consider whether recovery of litigation

---

[83] *Bussey v. Affleck*, 275 Cal. Rptr. 646, 648 (Cal. Ct. App. 1990).

[84] *Ripley v. Pappadopoulos*, 28 Cal. Rptr. 2d 878, 882–885 (Cal. Ct. App. 1994).

[85] *See Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 54 Cal. Rptr. 2d 888, 904 (Cal. Ct. App. 1996) (discussing *Ripley*).

21

expenses not authorized under section 1033.5(b) would be permitted under a broad contractual provision authorizing such expenses.[86]  Since *Ripley*, various courts have addressed this issue and permitted  recovery of costs beyond the limits under section 1033.5(b) if such costs were authorized by the parties' agreement.

For example, in *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, a Court of Appeal upheld the district court's award of costs beyond those listed in section 1033.5(b) because the contract between the parties authorized recovery of all "costs, charges, and expenses."[87]  The court further concluded that it did not "discern any legislative intent to prevent sophisticated parties from freely choosing a broader standard authorizing recovery of reasonable litigation charges and expenses."[88]  Other courts have followed this approach and permitted the recovery of expenses not contemplated by section 1033.5(b), including expert witness fees, when such expenses were contemplated by the parties' contract.[89]

Here, the North Lake, Compton and Palo Woods Leases all provide:

> Section 20.06 Expenses and Attorney's Fees.  If either party incurs any expense, including reasonable attorneys' fees, in connection with any action or proceeding instituted by either party by reason of any

---

[86] *Ripley*, 28 Cal. Rptr. at 885 n.18 (analyzing *Bussey*).

[87] *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 54 Cal. Rptr. 2d 888, 904 (Cal. Ct. App. 1996).

[88] *Id.*

[89] *Cataphora, Inc. v. Parker*, No. C09-5749 BZ, 2012 WL 17817, at *1 (N.D. Cal. Jan. 20, 2012) (permitting recovery of expert witness fees because the contract explicitly authorized the prevailing party to recover fees for expert witnesses); *see also LPP Mortg., Ltd. v. Bizar*, No. B184907, 2006 WL 1991411, at *1–*3 (Cal. Ct. App. July 18, 2006) (upholding an award of costs that included items not recognized by section 1033.5 because the parties' contract allowed for the recovery of "all expenses of any nature . . .").

alleged default or alleged default of the other party hereunder, the prevailing party in such action or proceeding shall be entitled to recover its said reasonable expenses from the other party.[90]

Section 20.06 authorizes the prevailing party to recover *any* expense. This provision is more expansive than simply authorizing attorney's fees and costs.[91] The Court concludes that Section 20.06 is broad enough to encompass audit and expert accounting fees.[92]

Payless has explained that it employed both Advantage IQ and Retail Optimization to provide litigation support and expert witness services. Michael Donahue, a Certified Public Accountant, was Vice President of Lease Audit Services at Advantage IQ and directed Advantage IQ's work on this case from inception until he left Advantage IQ and formed Retail Optimization.[93] Christine Herwit then took over the work for Advantage IQ.[94] This case involved the calculation of Pass-Through Expenses under the leases. The services provided by Advantage IQ and Retail Optimization

---

[90] North Lake Square Lease § 20.06, ECF No. 14-1; Compton Lease § 20.06, ECF No. 14-2; Palo Woods Lease § 20.06, ECF No. 14-4. The Palo Woods Lease uses the term "Attorneys' Fees" rather than "Attorney's Fees."

[91] *Cf.* Mem. Op. & Order, *Dollar Tree Stores, Inc. v. Centro NP LLC & Excel Realty Trust - NC*, No. 2:07cv608 (E.D. Va. Dec. 5, 2008) (denying claim for expert accounting fees because the contract referred only to "attorney fees and costs").

[92] *See Armada Bulk Carriers v. ConocoPhillips Co.*, 505 F. Supp. 2d 621, 623 (N.D. Cal. 2007) (in a case applying New York law, awarding expert fees because the contract provision for reimbursement of the prevailing party's costs and expenses was broad, specifying that "all costs and expenses (including reasonable attorney fees) shall be recoverable"); *Capital Bank, PLC v. M/Y Birgitta*, No. CV 08-5893 PSG (SSx), 2010 WL 4241584, at *6 (C.D. Cal. Oct. 18, 2010) (awarding $96,327.95 in expert witness fees because the cost provisions of the parties' contract allowed for reimbursement to the prevailing party of "all costs and expenses . . . reasonably incurred . . .").

[93] Donahue Decl. ¶¶ 1, 5, ECF No. 44-5.

[94] *Id.* ¶ 5.

23

included assisting with computing and analyzing the Pass-Through Expenses, attending the mediation, reviewing the information produced by defendants in discovery, assisting Payless' attorneys in preparing for depositions, and participating in discussions with Watt's accounting personnel about the overcharge calculations.[95]  The Court concludes it was reasonable for Payless to incur these expenses.

Advantage IQ charged Payless 25% of any recovery under the leases.[96]  Advantage IQ's invoices for the work performed on the North Lake, Compton and Palo Woods Leases amount to $32,214.10.  Payless has submitted evidence establishing the reasonableness of these charges.[97] Other courts have recognized the reasonableness of Advantage IQ's contingency fees.[98]  Defendants do not contest the reasonableness of these fees.  The Court concludes that Payless is entitled to $32,214.10.

Retail Optimization charged $13,666.80 for work performed from March 30 to June 12, 2011.[99]  This reflects 34.167 hours billed at a rate of $400 per hour.  Payless has submitted evidence establishing the reasonableness of this charge.[100]  Defendants do not contest the reasonableness of the rate charged by Retail Optimization.

---

[95] *Id*. ¶¶ 15 & 17; Herwit Decl. ¶ 3, ECF No. 44-6.

[96] Herwit Decl. ¶ 3; Donahue Decl. ¶ 20.

[97] *Id.*

[98] Am. J., *Am. Multi-Cinema, Inc. v. Developers Diversified Realty Corp.*, No. 0916-CV13428 (June 1, 2010 Circuit Ct. of Jackson Cnty., Mo.), ECF No. 44-8.

[99] Donahue Decl. ¶¶ 21–22.

[100] *Id.* ¶¶ 21–23.

In his declaration, Mr. Donahue describes generally the scope of work performed by Retail Optimization. Payless attaches a copy of the invoice from Retail Optimization reflecting that Mr. Donahue billed 34.167 hours for this case. But the invoice for Retail Optimization does not itemize the amount of time spent on any particular task described in Mr. Donahue's declaration. This is important because there is no indication that Mr. Donahue spent all 34.167 hours on the North Lake, Compton and Palo Woods Leases. As a result, the Court has no way to know how many of the 34.167 hours, if any, were spent calculating the Pass-Through Expenses for the North Mesa Lease.

Defendants have requested that the Court reduce by 25% any costs claimed by Payless to reflect Payless' lack of success on its claims under the North Mesa Lease. Payless has not suggested an alternative method. Rather than disallowing the entirety of Retail Optimization's fees, the Court will adopt the approach requested by Defendants and reduce by 25% the fees incurred by Retail Optimization. The Court concludes that Payless is entitled to $10,250.10.

Payless also seeks $8,868.55 and $1,261.67 for various costs incurred by Williams Mullen and Foulston Siefkin, respectively. This includes expenses for court filings, photocopies, federal express, online research, travel, postage, and delivery charges. As discussed above, the leases provide for the prevailing party to recover *any* expenses. Thus, the Court is not limited by the specific costs authorized in 28 U.S.C. §§ 1821 and 1920 or Cal. Civ. Proc. Code § 1033.5(b).

Defendants do not contest the reasonableness of any specific expenses incurred by Payless' attorneys. Payless has submitted affidavits that the costs incurred were necessary and reasonable.[101] The Court believes it is appropriate for Payless to recover the costs for court filings, photocopies, federal express, online research, postage, and delivery charges.

---

[101] Devine Decl. ¶¶ 59–60, ECF No. 44-3; Rankin Aff. ¶ 11, ECF No. 44-4.

But the Court is unable to determine the reasonableness of the travel costs sought by Williams Mullen.  Mr. Devine incurred travel costs in November 2010 that appear to have been related to the mediation held in California.  But there are no invoices showing the exact nature of these expenses.  Ms. Jarrell and Ms. Wheeling incurred travel expenses in March 2011 for a trip to Payless' headquarters to examine Payless' storage systems for electronically stored information. Likewise, there are also no invoices showing the exact nature of the travel expenses.  As a result, the Court cannot determine whether these travel expenses were reasonable.  Accordingly, the Court will not allow recovery of $2,890.82 in travel expenses.

Subtracting $2,890.82 from Williams Mullen's claimed expenses of $8,868.55 results in costs of $5,977.73 as follows:

- Online research & Pacer: $2,749.32
- Mediation: $2,062.50
- Federal Express: $33.26
- Photocopies: $1,132.65
- Total: $5,977.73

Foulston Siefkin's costs through September 15, 2011 are itemized below:

- Filing Fees: $839.50
- Delivery fees & postage: $134.92
- Copying costs: $287.25
- Total: $1,261.67

The Court has reviewed the time entries showing the legal research performed by Williams Mullen.  The Court does not believe that the online research costs were increased by including the claim under the North Mesa Lease.  Similarly, the Court believes that Payless should recover $2,062.50 for the cost of mediation and the full amount of the filing fees of $839.50 because these amounts would have been incurred regardless of the North Mesa Lease claim.

26

The Court cannot ascertain the degree to which the photocopying expenses, delivery charges, postage, and federal express fees relate to work performed on the North Mesa Lease claim. Rather than disallowing these entire amounts, the Court will adopt the approach requested by Defendants and reduce these amounts by 25%, which results in costs of $1,191.06.

Thus, Payless is entitled to $6,842.38 in costs incurred by Williams Mullen through July 2011 and Foulston Siefkin through September 15, 2011.

> 2.    Attorneys' Fees from Williams Mullen through July 31, 2011 and Foulston Siefkin through September 15, 2011

Under California law, the trial court has broad authority to determine the amount of a reasonable fee.[102]   The fee setting inquiry in California ordinarily begins by determining the "lodestar" amount.[103]   The lodestar figure is calculated by multiplying the number of hours reasonably worked by a reasonable hourly rate.[104]   The lodestar figure may then be adjusted upward or downward based on case specific facts to fix the fee at the fair market value of the services performed.[105]   In other words, the trial court should consider whether the lodestar amount is reasonable under all of the circumstances of the case.[106] Factors that the court may consider include: (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and

---

[102] *PLCM Grp. v. Drexler*, 997 P.2d 511, 518 (Cal. 2000).

[103] *Id.*

[104] *Id.*

[105] *Id.*

[106] *Id.*

(3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award.[107]   The burden is on the party seeking attorneys' fees to prove that the fees it seeks are reasonable.[108]

The reasonable hourly rate is that prevailing in the community for similar work.[109]   In the unusual circumstance that local counsel is unavailable, a trial court may consider out-of-town counsel's higher rates.[110]   The use of the higher rates for out-of-town counsel requires a sufficient showing that hiring local counsel was impracticable.[111]

Payless seeks to recover attorneys' fees from Williams Mullen based upon the following hourly rates:

| Name | Description of Work | Hourly Rate | Hours |
|------|---------------------|-------------|-------|
| William F. Devine | Lead partner | $395 | 261.20 |
| Bennett B. Borden | Partner, e-discovery efforts | $395 / $425[112] | 6.40 |
| Kendra J. Jarrell | Lead associate responsible for research, drafting, preparation, discovery, case management | $310 / $320 | 403.10 |

---

[107] *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 50 Cal. Rptr. 3d 731, 757–58 (Cal. Ct. App. 2006).

[108] *Gorman v. Tassajara Dev. Corp.*, 100 Cal. Rptr. 3d 152, 196 (Cal. Ct. App. 2009).

[109] *PLCM Grp.*, 997 P.2d at 518.

[110] *Rey v. Madera Unified Sch. Dist.*, 138 Cal. Rptr. 3d 192, 207 (Cal. Ct. App. 2012).

[111] *Id.*

[112] The hourly rates for Mr. Borden, Ms. Jarrell, and Ms. Hunter were adjusted upward effective February 1, 2011.  Devine Decl. ¶ 49, ECF No. 44-3; Frieden Decl. ¶ 20, ECF No. 44-1.

| Lauren M. Wheeling | Associate, discovery, e-discovery, document compilation, review and production, deposition preparation | $295 | 105.80 |
| Stephanie Hunter | Lead paralegal; document review and management; discovery and document production; assist with deposition preparation | $175 / $180 | 209.00 |
| David N. Jones | Director of Williams Mullen's Electronic Discovery Center (EDC), assisting with e-discovery matters | $215 | 4.20 |
| Litigation support | Various EDC data engineers and technicians, assisting with e-discovery matters | $165 | 12.60[113] |

Payless also seeks to recover fees from its local counsel, Foulston Siefkin. Mr. Rankin, a partner, charged between $305 and $330 per hour, Patricia Blankenship, a partner, charged $250 per hour, and Jeremy Graber, an associate, charged between $170.00 and $185.00 per hour.[114]

Payless has submitted expert evidence in the form of a declaration by John C. Frieden that the hourly rates in Topeka for similar litigation range from $275.00 to $325.00 per hour for partners, $225.00 to $275.00 for associates, and $75.00 to $175.00 per hour for paralegals.[115] In a 2011

---

[113] Devine Decl. ¶ 51.

[114] Rankin Decl. ¶¶ 8–9, ECF No. 44-4.

[115] Frieden Decl. ¶ 25, ECF No. 44-1.

opinion, Judge Rogers considered the rates that judges in this District have utilized.[116]  Based upon the evidence before the court and Judge Roger's own familiarity with the relevant rates in the Topeka community, Judge Rogers allowed the following hourly rates: $325 per hour for partners, $200 for associates; $125 for law clerks; and $100 for paralegals and other support staff.[117]  Judge Rogers also concluded that these figures represented the high end of the hourly rates in Topeka.[118]

The hourly rates charged by local counsel at Foulston Siefkin – Mr. Rankin,[119] Ms. Blankenship, and Mr. Graber – all fall within the range described by Mr. Frieden and Judge Rogers. Accordingly, the Court finds that the rates charged by Foulston Siefkin are reasonable.

Mr. Frieden did not provide any details about the market rate for the services performed by Mr. Jones and various other litigation support professionals.  Although Mr. Frieden opined that the these rates are reasonable, he does not provide the basis for such a conclusion.  In accordance with Judge Rogers' 2011 opinion, the Court will utilize a rate of $100.00 per hour for Mr. Jones and other members of the EDC group.

Based upon its own knowledge and Judge Rogers' opinion, the Court believes that Ms. Hunter's hourly rate of $175/$180 is excessive for the Topeka market.  For example, $175 per hour is the same amount charged by Mr. Graber, an associate attorney at Foulston Siefkin.   The rates

---

[116] *Kan. Penn Gaming, LLC v. HV Properties of Kan., LLC*, 790 F. Supp. 2d 1307, 1319 (D. Kan. 2011), *aff'd*, 662 F.3d 1275 (10th Cir. 2011).

[117] *Id.*

[118] *Id.* at 1319–20.

[119] Mr. Rankin's rate for 2011 is $5.00 per hour higher than the range described by Mr. Frieden.  But the Court does not believe that a downward adjustment is warranted because this is the standard rate charged by Mr. Rankin for work performed in the Topeka area.  Rankin Decl. ¶ 9.

charged by the paralegals at Defendants' local counsel in Topeka were $85.00 per hour. Payless cites no authority from this District authorizing a hourly rate of $175 for a paralegal. The Court adjusts Ms. Hunter's rate to $100.00 per hour.

The hourly rates charged by Mr. Devine, Mr. Borden, Ms. Jarrell, and Ms. Wheeling are all higher than the range described by Mr. Frieden, Payless' expert, and the rates utilized by Judge Rogers. Payless cites no authority from this District awarding fees at the hourly rates requested by its counsel. With the exception of Mr. Devine, Mr. Frieden has not sufficiently explained to the Court why it is appropriate to deviate from the range of rates that he described for the Topeka area. Accordingly, the Court will adjust Mr. Borden's hourly rate to $325, Ms. Jarrell's hourly rate to $275.00, and Ms. Wheeling's hourly rate to $250.00.[120] Because Mr. Devine specializes in retail commercial litigation and in particular, litigation involving efforts by major shopping center owners to overcharge retail tenants under the provisions of shopping leases, the Court finds Mr. Devine's hourly rate of $395 to be reasonable.[121]

The second part of the lodestar inquiry focuses on the amount of hours reasonably expended. Mr. Devine testified that the work performed on this case was done at his direction. After reviewing Williams Mullen's billing records related to this case, Mr. Devine allocated each time entry to the following various categories of work:

- Preliminary Assessment: Initial calls and discussions with client and auditors; preliminary analysis of potential claims and strategy ($2,738.50).

---

[120] The hourly rates for Ms. Jarrell and Ms. Wheeling are higher than those charged by Mr. Graber, an associate for Payless' local counsel, because Ms. Jarrell and Ms. Wheeling are more experienced attorneys.

[121] Frieden Decl. ¶ 7.

- Case Management: File and document management; litigation hold notices; identifying and coordinating with local counsel; case status conferences; tracking deadlines; complying with Local Rules ($5,156.00).

- Claim Investigation and Strategy: Detailed claim analysis; digesting leases, overcharge calculations, and spreadsheets; legal research on causes of action and other issues; developing litigation strategy ($18,062.00).

- Original Filing: Preparation and filing of the Initial Action, including Petition and exhibits; service of process; *pro hac vice* admissions ($4,441.00).

- Mediation: Communications with opposing counsel; negotiation and preparation of Mediation Agreement; preparation and filing of dismissal documents; preparation of claim information and supporting documentation; analysis of information provided by Landlords; submissions to Mediator and Landlords; preparation for, travel for, and participation in mediation; post-mediation discussions, communications, and settlement efforts ($68,499.50).

- Refiled Action and Affirmative Defenses: Preparation and filing of the Second Action after mediation, including Petition and exhibits, *pro hac vice* admissions, Corporate Disclosure Statement, Designation of Place for Trial, Scheduling Order, and planning conference, pretrial conference, ESI conference, and related matters ($22,509.50).

- Removal/Motion to Transfer: Landlord's removal of the action to federal court and opposition to Landlord's request to transfer the action to the Central District of California, including review of removal pleadings; analysis of Motion to Transfer and supporting brief; legal research; preparation and filing of brief in opposition; and review of Memorandum and Order denying motion ($18,689.00).

- Initial Disclosures: Preparation of Initial Disclosures; compilation, review, and production of documents; communications and discussions with opposing counsel regarding production of electronic data; reviewing, organizing, and indexing Landlord's documents; and analyzing pass-through expenses spreadsheets ($11,199.00).

- E-Discovery Issues, Compliance, Witness Interviews, Protective Order, and Production: Investigating Payless' electronic records and systems; developing reasonable and cost-effective protocols from preserving, collecting, reviewing, and organizing client records; arranging for collection and review of records and electronic data; compliance with Rule 26(f) Report and federal rules; preparation of Agreed Protective Order; developing scanning protocol to ensure accuracy and chain of custody; interviews of key custodians, data stewards, Counsel, IT personnel, and

witnesses at Payless; meetings with lease auditors regarding collection of ESI; coordinate data systems for uploading and sharing of data; overseeing electronic data collection; reviewing and analyzing electronic data and documents for accuracy, privilege, relevance, and responsiveness; running searches of electronic documents; creating keywords and search terms for electronic documents; and preparing production of documents and electronic data ($29,513.00).

- Written Discovery: Interrogatories, requests for production, and requests for admission, including drafting and service of discovery requests; reviewing and analyzing Landlords' Initial Disclosures and document production; communications with counsel regarding discovery issues, Rule 30(b)(6) depositions; managing deadlines and related issues; preparing and filing Joint Motion and Agreed Order extending discovery deadline; and analyzing CAM reconciliations related to other tenants ($21,322.00).

- Depositions: Identification of Rule 30(b)(6) deposition topics; communications with counsel regarding deposition designations, scheduling, and related issues; preparing extensive deposition outlines; analyzing witness designations on multiple topics; identifying, analyzing, collecting, and organizing several hundred anticipated deposition exhibits; and related issues ($34,054.00).

- Expert Witnesses: Communications with lease auditors (anticipated expert witnesses); review and analysis of auditors' work product concerning overcharge claims, damage calculations, discovery, and opinions ($18,879.00).

- Settlement: Settlement negotiations; claim analysis; review and analysis of Landlords' computations; conference calls with counsel and auditors regarding claims and resolution; preparation for settlement conference; and preparation and negotiation of Agreement, Joint Motion, Agreed Order, and other documentation ($19,792.50).

- Fee Petition: Preparation of Payless' petition for attorneys' fees, audit fees, and other expenses ($30,316.00).

Defendants do not challenge the reasonableness of any hours incurred by Payless' local counsel. Of the fourteen categories of work performed by Williams Mullen, Defendants challenge the fees for Mediation, Re-filed Action and Affirmative Defenses, Written Discovery, Depositions, and Expert witnesses, but do not identify any particular time entry or task that they contend was unnecessary or took too long.

For example, Defendants contend that fees in the amount of $22,509.50 for the category of "Refiled Action and Affirmative Defenses" was unreasonable because the complaint in the re-filed action was virtually identical to the initial complaint.  Further, Defendants contend that Payless' counsel should not have devoted significant time to researching Defendants' affirmative defenses in light of Payless' characterization of these defenses as frivolous.

The hours included in "Refiled Action and Affirmative Defenses" represent work performed over a five month period that was broader than just preparing the re-filed petition and researching Defendants' affirmative defenses.  Williams Mullen spent only three hours (amounting to $1,006.50 in fees) finalizing and re-filing the petition.  Williams Mullen spent 21.7 hours (amounting to $6,521.50 in fees) researching Defendants' twenty-seven affirmative defenses and drafting a memorandum outlining the elements of each.  Even if these defenses were ultimately believed to be frivolous, it was proper for Payless' attorneys to research the defenses to reach this conclusion.

The remaining hours included in the category of "Refiled Action and Affirmative Defenses" represent time spent on (1) filing applications for *pro hac vice* admission in state court, (2) drafting Plaintiff's opposition to Defendants' motion to transfer venue; (3) preparing for the Rule 26(f) planning conference, preparing the parties' Report of Scheduling Conference, conferring with Payless and Defendants' counsel regarding electronically stored information ("ESI"), and attending the scheduling conference; and (4) preparing a corporate disclosure statement and designation of place of trial, preparing applications for *pro hac vice* admission in federal court, and reviewing local rules.  The Court finds that the hours included in the category of "Refiled Action and Affirmative Defenses" were reasonable.

Defendants also claim that the $21,322 incurred for "Written Discovery" was unreasonable

because written discovery had a limited role in this case.  Defendants point out that the written discovery consisted of one set of interrogatories, one set of requests for admissions, and one set of requests for production of documents.  But of the 77.2 hours devoted to "Written Discovery," nearly half (38.5 hours; $10,285) was spent reviewing documents and records that Defendants had produced with their Initial Disclosures.  The remaining 38.7 hours were spent (1) developing discovery strategy; (2) drafting and serving interrogatories, requests for production, and requests for admissions; (3) compiling documents in anticipation of discovery requests from Defendants; (4) conferring with Defendants' counsel regarding document production and ESI protocols; and (5) analyzing Defendants' discovery responses.  The Court finds that these hours were reasonable.

The Court need not dwell on every category of hours that Defendants claim to be unreasonable.  Payless' lead counsel, Mr. Devine, testified that he was conscious to avoid duplication of effort in this case and carefully considered the staffing of this case.[122]  He also testified that all of the work performed by Williams Mullen was reasonable and necessary to prosecute Payless' claims.[123]  Mr. Rankin, the partner in charge for Payless' local counsel, testified that the charges by Foulston Siefkin were reasonable.[124]  Payless' expert on fees, Mr. Frieden, testified that he has reviewed the work of Williams Mullen and Foulston Siefkin and, in his opinion, the work was reasonable and necessary for the successful prosecution of this action.[125]  The Court has reviewed the time entries of Payless' counsel and finds that the hours spent on this case were reasonable.

---

[122] Devine Decl. ¶¶ 14–15, 53, ECF No. 44-3.

[123] *Id*. ¶ 48.

[124] Rankin Aff. ¶ 11, ECF No. 44-4.

[125] Frieden Decl. ¶¶ 28–29, ECF No. 44-1.

The Court calculates the lodestar figure for Williams Mullen through July 31, 2011 to be as follows:

| Name | Adjusted Hourly Rate | Hours | Total |
|------|---------------------|-------|-------|
| William F. Devine | $395 | 261.20 | $103,174 |
| Bennett B. Borden | $325 | 6.40 | $2,080 |
| Kendra J. Jarrell | $275 | 403.10 | $110,852.50 |
| Lauren M. Wheeling | $250 | 105.80 | $26,450 |
| Stephanie Hunter | $100 | 209.00 | $20,900 |
| David N. Jones | $100 | 4.20 | $420 |
| Litigation support | $100 | 12.60 | $1,260 |

Total:  $265,136.50

As discussed above, the Court deducts $20,000 from this figure to reflect the time spent on the North Mesa Lease claim.  Thus, the lodestar figure for Williams Mullen through July 31, 2011 is $245,136.50.

The Court calculates the lodestar figure for Foulston Siefkin through September 15, 2011 to be $10,371.50.

3.   Attorneys' Fees and Costs from Williams Mullen From August 1 Through November 14, 2011

In its initial memorandum filed October 5, 2011, Payless seeks attorneys' fees for Williams Mullen through July 31, 2011.  In its reply, Payless seeks an additional $77,199.50 in attorneys' fees for Williams Mullen from August 1, 2011 through November 14, 2011.  Defendants object to Payless' attempt to recover attorneys' fees incurred from August 1, 2011 through October 5, 2011

because these billings should have been submitted with Payless' initial memorandum.

Williams Mullen's charges for August and September 2011 amount to approximately $27,336.50. There does not appear to be any legitimate reason why Payless did not include this information with its October 5, 2011 memorandum, and no explanation is offered. Williams Mullen's billing department should have been able to generate this information prior to October 5, 2011. For example, in the reply filed on November 16, 2011, Williams Mullen included its fees through November 14, 2011.

This potentially puts Defendants at a disadvantage because they did not have an opportunity to review the August and September billings before filing their opposition. But Defendant Retail Center has engaged in similar conduct. For example, in support of its motion for attorneys' fees, Defendant Retail Center submitted redacted billings from its attorneys. In its opposition, Payless argues that it could not determine the reasonableness of the time spent by Retail Center's attorneys because the substance of the work performed had been redacted. Retail Center then submitted un-redacted versions of its counsel's billing statements with its Reply. Thus, Payless did not have an opportunity to review the un-redacted billing statements when drafting its opposition to Retail Center's motion for attorneys' fees. Under the circumstances of this case, the Court will consider Williams Mullen's billings from August 1, 2011 through October 5, 2011 and the un-redacted billing statements from Retail Center's counsel.

As discussed above, Payless requests an additional $77,199.50 in attorneys' fees for Williams Mullen from August 1, 2011 through November 14, 2011. $6,374 was incurred to prepare the parties' Settlement Agreement and issues related thereto. The $6,374 reflects 16 hours billed by Mr. Devine at $395 per hour and .3 hours billed by Ms. Hunter at $180. The Court finds the amount of

time spent to be reasonable.  Adjusting Ms. Hunter's rate to $100 per hour, the Court finds that Payless is entitled to $6,350.

The remaining $70,825.50 incurred by Williams Mullens relates to the fee petition, including engaging and consulting Mr. Frieden as a fee expert, researching applicable standards, preparing the motion for attorneys' fees and supporting documents, analyzing Defendant Retail Center's motion for attorneys' fees, preparing an opposition to Defendant Retail Center's motion for attorneys' fees, and filing a reply in support of Payless' motion for attorneys' fees.  This is reflected in the following chart:

| Name | Hourly Rate | Hours | Total |
|------|-------------|-------|-------|
| William F. Devine | $395 | 93.10 | $36,774.50 |
| Kendra J. Jarrell | $320 | 84.3 | $26,976 |
| Lauren M. Wheeling | $295 | .3 | $88.5 |
| Stephanie Hunter | $180 | 37.5 | $6,750 |
| David N. Jones | $215 | 1.1 | $236.50 |
| Total | | 216.30 | $70,825.50 |

Adjusting for reasonable hourly rates, the 216.30 hours amount to $63,892 as follows:

| Name | Adjusted Hourly Rate | Hours | Total |
|------|----------------------|-------|-------|
| William F. Devine | $395 | 93.10 | $36,774.50 |
| Kendra J. Jarrell | $275 | 84.3 | $23,182.50 |
| Lauren M. Wheeling | $250 | .3 | $75.00 |
| Stephanie Hunter | $100 | 37.5 | $3,750 |
| David N. Jones | $100 | 1.1 | $110 |

| Total | | 216.30 | $63,892 |
|-------|--|--------|---------|

From this $63,892, the Court deducts $26,794 to reflect work performed on issues relating to the North Mesa Lease.[126]  This results in $37,098 being billed from Williams Mullen from August 1, 2011 to November 14, 2011 to prepare the motion for attorneys' fees and issues related thereto.

This  $37,098 is in addition to the 97.6 hours ($26,227 as adjusted for hourly rates) spent by Williams Mullen on the motion for attorneys' from May 16, 2011 to July 31, 2011, and the 30.05 hours ($9,857.50) spent by Williams Mullen's expert on this issue.  Payless has not demonstrated to the Court that it was reasonable for its attorneys to have charged $73,182.50 to prepare the motion for attorneys' fees.

Williams Mullen has filed fee petitions in at least two other cases involving similar lease issues.  Despite that there are unique issues and facts in each case, this should reduce the time necessary to prepare the current motion.  Indeed, at least some portions of the current motion appear to be substantially similar to one of the prior motions.[127]  Much of the work performed on the motion for attorneys' fees from August 1, 2011 through November 14, 2011 was done by Mr. Devine.  Some of his time entries are described generally as "work on fee petition," "prepare fee petition," "prepare information for fee petition," or "prepare affidavits."  The Court does not believe that this work was so complicated that it required an attorney with Mr. Devine's experience and billable rate of $395 per hour.  Accordingly, the Court will reduce the amount sought for Williams Mullen from August

---

[126] Devine Supp. Decl. ¶ 26, ECF No. 54-1.

[127] *See* Mem. in Supp. of Mot. for Att'ys' Fees and Interest, *Dollar Tree Stores, Inc. v. Norcor Bolingrbook Assocs., L.L.C.*, No. 2:09-cv-66 (E.D. Va. Sept. 24, 2009), ECF No. 44.

1, 2011 to November 14, 2011 by 25%.  This results in $27,823.50.

Payless also seeks to recover an additional $830.40 for various costs incurred by Williams Mullen through November 14, 2011.  The Court finds the costs to be reasonable but will deduct 25% for the North Mesa Lease claim.  This results in costs of  $622.80.

Payless also seeks to recover the costs for employing Mr. Frieden as an expert.  The Court believes it was reasonable to employ Mr. Frieden in this capacity, and also finds his charges of $9,970.18 to be reasonable.

4.    Summary of Attorneys' Fees and Costs

Accordingly, the Court calculates the lodestar figure and recoverable costs for Payless as follows:

| Category | Amount Sought | Adjusted amount |
|---|---|---|
| Williams Mullen's Attorneys' Fees through July 31, 2011 | $304,410.00 | $245,136.50 |
| Williams Mullen's Attorneys' Fees from August 1, 2011 through November 14, 2011 | $77,199.50 | $34,173.50 |
| Foulston Siefkin's Attorneys' Fees through September 15, 2011 | $10,371.50 | $10,371.50 |
| Advantage IQ's fees | $32,214.10 | $32,214.10 |
| Retail Optimization's fees | $13,666.80 | $10,250.10 |
| Expert fees for John Frieden | $9,970.18 | $9,970.18 |
| Williams Mullen's costs through July 31, 2011 | $8,868.55 | $5,686.25 |

| Williams Mullen's costs from August 1, 2011 through November 14, 2011 | $830.40 | $622.80 |
|---|---|---|
| Foulston Siefkin's costs through September 15, 2011 | $1,261.67 | $1,156.13 |

Total:                                              $349,581.06

### 5.    Adjustment of Lodestar

As discussed above, the trial court should consider whether the lodestar amount is reasonable under all of the circumstances of the case.[128]  Factors that the court may consider include: (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award.[129]  Having carefully considered these factors, the Court believes that the lodestar is reasonable.

### D.    Defendant Retail Center is Entitled to $61,185.83 in Expenses and Attorneys' Fees as the Prevailing Party under the North Mesa Lease.

As discussed above, Defendant Retail Center is the prevailing party under the North Mesa Lease and is entitled to its reasonable expenses and attorneys' fees in defending the claims brought under the North Mesa Lease.  Retail Center seeks $62,069.94 in attorneys' fees and $131.88 in costs.

Under Nevada law, a court may award attorney fees using the lodestar approach or a

---

[128] *PLCM Grp. v. Drexler*, 997 P.2d 511, 518 (Cal. 2000).

[129] *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 50 Cal. Rptr. 3d 731, 757–58 (Cal. Ct. App. 2006).

contingency fee basis.[130]  The Court will utilize the lodestar approach.  Under the lodestar method, the Court must first "multiply the number of hours reasonably spent on the case by a reasonable hourly rate."[131]  The Court must then consider whether to adjust the lodestar amount based upon the factors enumerated by the Nevada Supreme Court in *Brunzell v. Golden Gate National Bank*, 455 P.2d 31, 33 (Nev. 1969).

The "Brunzell factors" include: "(1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; (4) the result: whether the attorney was successful and what benefits were derived."[132]

Through September 30, 2011,[133] Retail Center seeks to recover attorneys' fees based upon the following hourly rates:

| Name | Description | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| David E. Frank | Lead partner | 54.61 | $285 | $15,563.85 |
| Gregory W. Koonce | Associate | 108.21 | $262.50 | $28,405.12 |

---

[130] *Shuette v. Beazer Homes Holding Corp.*, 124 P.3d 530, 549 (Nev. 2005).

[131] *Hsu v. Cnty. of Clark*, 173 P.3d 724, 733 (Nev. 2007).

[132] *Brunzell v. Golden Gate Nat'l Bank*, 455 P.2d 31, 33 (Nev. 1969) (internal citations and quotation omitted).

[133] The charges for local counsel are through October 5, 2011.  Glenn Decl. ¶ 3, ECF No. 48.

| Annie R. Embree | Associate | .38 | $262.50 | $99.75 |
| Jennifer Holdener | Associate | .46 | $212.50 | $97.75 |
| Jennifer Vincent | Paralegal | 6.73 | $130 | $874.90 |
| Jay Allen Eisen | Appellate Specialist | .13 | $450 | $58.50 |
| Grant Glenn | Lead local counsel | 10.73 | $225 | $2,414.25 |
| Justin Whitney | Associate | .65 | $150 | $97.50 |
| Nikki Babcock | Paralegal | .13 | $85 | $11.05 |
| Amy Foster | Paralegal | .05 | $85 | $4.25 |

Total   $47,626.92

Apparently, due to rounding parameters in the billing software, the actual amount billed to Retail Center, and thus the amount of attorneys' fees claimed, is $47,430.66.[134]

For the period October 1, 2011 through the filing of the Reply, Retail Center incurred an additional $14,639.28 in attorneys' fees.  These fees were billed by attorneys Frank and Koonce at the rates listed above.

Most of the hourly rates charged by Retail Center's counsel fall within the range described by Payless' expert, Mr. Frieden, and are consistent with the rates that the Court found to be reasonable with respect to Payless' motion.   With the exception of Ms.Vincent and Mr. Eisen, the Court finds the rates charged by Retail Center's counsel to be reasonable for the Topeka market.

The Court finds that Ms. Vincent's reasonable rate is $100 per hour.  This results in a reduction of $201.90.

It is not clear why Retail Center or its counsel engaged the services of an appellate specialist, Mr. Eisen, to research a venue issue.  The Court will reduce Mr. Eisen's rate from $485 to $285 –

---

[134] Frank Decl. ¶ 3 & Ex. B, ECF No. 47.

the same as Mr. Frank's rate.  This results in a reduction of $21.45.  Thus, a total of $223.35 would normally be deducted from the amount billed to Retail Center.  But because Retail Center was billed $196.26 less than it should have been due to rounding errors, the Court will deduct only $27.09.  The Court will now turn to the reasonableness of the hours billed by Retail Center's attorneys.

In support of its motion for attorneys' fees, Retail Center submitted redacted time sheets from its counsel.  Payless contends that the redactions make it impossible to determine what services were performed, whether those services were necessary, and whether the time devoted to those services were reasonable.  As a result, Payless argues that the Court should refuse to award $34,116.68 in fees for Retail Center's lead counsel (Frank Law Group) and $1,192.56 in fees for its local counsel (Woner, Glenn, Reeder & Girard).  As part of its Reply, Retail Center attaches un-redacted versions of the time records.  As discussed previously, the Court will consider the un-redacted time records.

The un-redacted time records largely cure the deficiencies described by Payless as to the time entries for Frank Law Group.  For example, in the redacted time sheets, the time entry for March 17, 2010 reflects that Mr. Frank performed legal research regarding an unidentified subject and sent an e-mail to his clients regarding an unidentified topic.  The un-redacted time sheets provide the missing information and describe that the research and communications related to removal and venue issues.

But there are still some time entries from Retail Center's local counsel (Woner Glenn) that contain general descriptions of the work performed without identifying the substance of the activity performed.  The Court is able to determine the subject matter of the majority of these time entries by cross-referencing them with the un-redacted time entries from Frank Law Group.  For example, Mr. Glenn's December 29, 2010 time entry states ". . . various communications."  Cross-referencing

44

Mr. Glenn's time entry with the un-redacted time entry of David Frank reveals that the communications related to the notice of removal.  A January 26, 2011 time entry for Mr. Glenn reflects only "communicated with counsel."  Cross-referencing this time entry with Mr. Koonce's un-redacted time entry for January 26, 2011 reveals that the substance of the communication related to the parties' planning report.

The Court cannot determine the substance of the communications described in Mr. Glenn's time entries of 1/4/2011, 3/15/2011, and 9/6/2011. These entries total $180.01.  Accordingly, the Court deducts $180.01 from Retail Center's award.

Retail Center concedes that its billing invoices include two duplicate time entries that amount to $136.50.  Accordingly, the Court deducts $136.50 from Retail Center's award.

Although conceding that it is not *per se* improper to award fees for unsuccessful motions, Payless argues that the Court should not allow any compensation for the time spent on Defendants' unsuccessful motion to transfer.  Although Defendants might have had a stronger argument if they had challenged jurisdiction,[135] the Court finds nothing improper about Defendants filing a motion to  transfer based upon venue.  Because the Court does not believe that the motion was frivolous or baseless, the Court will award Retail Center the fees that its attorneys incurred in preparing the motion for transfer.

Payless also argues that the Court should strike two time entries because they were not contemporaneously kept.  Payless points out that the February 2, 2011 invoice from Frank Law Group contains a time entry dated 10/24/2011 – eight months after the bill.  In its Reply, Retail

---

[135] *See* Mem. & Order, *Payless Shoesource, Inc. v. Diana Joye, as Trustee of the Dena Trust*, No. 11-4145-CM (D. Kan. Feb. 27, 2012), ECF No. 20 (granting Defendant's motion to transfer for lack of juridiction in a similar case).

Center explains that the February 2, 2011 invoice contains an inadvertent typographical error and that the date should have been 1/24/2011.[136]  The Court does not believe there is any basis to strike this time entry.

Next, Payless points out that the March 3, 2011 invoice from Frank Law Group includes a time entry for December 30, 2011.  Retail Center explains that this time entry reflects research done by Jay Allan Eisen, who maintains a separate law office.  The invoice from Mr. Eisen was received during the February 2011 billing period and included on the next billing invoice.  The Court finds that Retail Center has adequately explained this time entry.

Next, Payless argues that the charges related to discovery issues were improperly divided equally among all Defendants rather than billing the work related to a particular shopping center to the landlord for that shopping center.  Retail Center argues that it was reasonable to allocate the discovery related charges equally because Payless served written discovery request on the four defendants collectively – one set of interrogatories, one set of requests for production of documents, and one set of requests for admissions – and all of the documents were maintained by one property manager.  Further, all of the potential deposition witnesses were common for each of the Defendants.  Under the facts of this case, the Court believes that allocating the discovery costs equally among the Defendants is reasonable.

As discussed with respect to Payless' motion for attorneys' fees, Payless did not provide an invoice from Retail Optimization reflecting how the work was allocated among the different claims. And unlike the attorney's fees, Payless did not attempt to allocate certain costs among the different leases.  Rather than striking these expenses in their entirety, the Court allowed Payless to recover

---

[136] Frank Decl. ¶ 5, ECF No. 56-1.

75% of these costs by allocating them equally among the claims.  Following the same approach, the Court will allow Retail Center to recover 25% of the charges incurred for discovery.

Mr. Frank's billing records for August 30 and September 1, 2011 include charges for an agreed motion to add Palo Woods, LLC as an additional defendant in this case.  During the course of this litigation, the parties discovered that Palo Woods, LLC was the successor-in-interest to Ginger Root as the owner and landlord for Palo Woods Shopping Center.  The Court believes that this charge should be allocated in its entirety to Palo Woods, not Retail Center.  Accordingly, the Court deducts $128.25 from the fees claimed by Retail Center.

Mr. Koonce's time entry for February 14, 2011 includes time billed for drafting a tolling agreement.  Retail Center explains that its attorneys prepared tolling agreements between the Defendants in conjunction with the necessary waivers of conflict involved in representation of the four Defendants by one law firm.  The Court does not believe that this activity qualifies as defending the case within the meaning of Section 22.06 of the North Mesa Lease.  In other words, drafting the tolling agreement was necessary because the Defendants chose to be represented by the same attorney, not because it was related to the actual defense of the claims.  Accordingly, the Court deducts $257.25 from the fees sought by Retail Center.

Payless also argues that the time entries for December 30, 2010 and January 3, 2011 should be reduced or eliminated because they include time spent on drafting and revising the answer; more specifically, Payless contends that several of the 27 affirmative defenses raised in the answer were specious or frivolous.  At least some of the affirmative defenses by Retail Center appear to have been boilerplate.  For example, the Court does not understand how a defense of contributory negligence applies to a contract action.  But it is not clear that all of the affirmative defenses were necessarily

frivolous.  And the time allocated to Retail Center for drafting and revising the answer is only 1.01

hours, which also includes preparing *pro hac vice* motions and reviewing correspondence.  In short,

counsel for Retail Center does not appear to have spent any significant time on the affirmative

defenses to warrant any reduction.

There are four time entries by Retail Center's local counsel that Payless contends are

administrative activities and not properly chargeable:

| Date | Timekeeper | Description | Time | Charge |
|------|-----------|-------------|------|--------|
| 10/04/11 | GMG | "Review communication to prepare file for final closing." | 1.7 | $95.63 |
| 12/2/10 | GMG | "Worked on fee agreement and requested additional information for agreement about names of clients, etc." | .90 | $50.63 |
| 12/22/10 | GMG | "Finalize fee agreement and forwarded to client." | .60 | $33.75 |
| 02/01/11 | GMG | "…made arrangements for filing of documents while most of staff went home early because of severe snowstorm." | 1.90 | $106.88 |
| | | | | $286.89 |

The Court is not convinced that these items are properly chargeable to a client.  The Court

deducts $286.89 from Retail Center's award.

With the exception of the specific items described above, the Court finds the remaining time

spent by counsel for Retail Center to be reasonable.  The Court deducts a total of $1,015.99 from the

$62,069.94 sought in attorneys' fees by Retail Center.  This results in a lodestar figure of $61,053.95.

48

After carefully considering the factors identified by the Nevada Supreme Court in *Brunzell v. Golden Gate National Bank*, 455 P.2d 31, 33 (Nev. 1969), the Court does not believe an upward or downward departure from the lodestar figure is appropriate.

The Court finds the costs of $131.88 incurred by Retail Center to be reasonable.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Attorneys' Fees and Expenses (ECF No. 43) is hereby granted in part.  Payless is entitled to recover the total of $349,581.06 in expenses and attorneys' fees from W/J Commercial Venture, L.P., Compton Commercial Redevelopment Company, and Ginger Root Commercial Associates LLC.

**IT IS FURTHER ORDERED** that Defendant Retail Center Partners, Ltd.'s Motion for Attorney's Fees and Costs (ECF No. 46) is hereby granted in part.  Retail Center is entitled to recover $61,185.83 in expenses and attorneys' fees from Payless.

**IT IS SO ORDERED**.

Dated this 8th day of August 2012, at Topeka, Kansas.

<u>s/K. Gary Sebelius</u>
K. Gary Sebelius
U.S. Magistrate Judge